STATE OF NORTH CAROLINA, Ex Rel. COMMISSIONER OF INSURANCE v. COMPENSATION RATING AND INSPECTION BUREAU OF NORTH CAROLINA

No. 7710INS256

(Filed 18 April 1978)

1. **Master and Servant § 80— workmen's compensation—erroneous denial of rate increase**

    Order of the Commissioner of Insurance denying an increase in workmen's compensation rates is vacated where the findings of fact upon which the order was based were not supported by material and substantial evidence.

2. **Master and Servant § 80— workmen's compensation rates—benefit cost projections—methods used in other states—adjustment based on experience**

    The Commissioner of Insurance erred in finding that projections of increased workmen's compensation benefit costs were speculative because they were based on the same methods used to project costs in 11 other states in which subsequent experience showed a need for a downward adjustment in 6

of the states and upward adjustment in 5 of the states, since the fact that experience might require an adjustment in rates does not invalidate a projection of rates.

APPEAL from the Commissioner of Insurance. Order dated 14 October 1975, as revised 11 February 1977. Heard in the Court of Appeals 31 January 1978.

This is the second time this case has been before this Court. *See Commissioner of Insurance v. Rating and Inspection Bureau,* 30 N.C. App. 332, 226 S.E. 2d 822 (1976). On 18 June 1974, the Compensation Rating and Inspection Bureau of North Carolina (hereinafter referred to as Bureau) made a filing with the Commissioner of Insurance (hereinafter referred to as Commissioner) seeking approval of a revised premium rate for workmen's compensation insurance written in North Carolina. This filing (pursuant to Article 2 of Chapter 97 of the General Statutes, which has since been repealed) proposed an average increase of 11.8% in the overall level of workmen's compensation insurance rates and rating values. It was based on a proposed decrease of 9% resulting from a review of policy year and calendar year workmen's compensation experience in the State, and a proposed reduction in the loss adjustment expense by .4%, and a proposed increase in the rate level of 23.4% brought about by the effect of legislation increasing workmen's compensation benefits, increases in the North Carolina Industrial Commission medical, dental, nursing and hospital fee schedules, and an increase in the North Carolina Industrial Commission assessment. In addition to the 11.8% rate increase, the filing further proposed an increase in the United States Longshoremen's and Harbor Workers' Compensation Coverage Percentage, changes in the excess loss premium factors, and changes in the minimum premium formula.

Prior to the 18 June 1974 filing, the Bureau had made a filing on 13 June 1973 requesting approval of revised rates and rating values representing an average increase of 18.4% in the overall rate of workmen's compensation insurance rates based on the estimated effect of benefit level increases enacted by the Legislature and a revision of medical, dental, nursing and hospital fee schedules adopted by the Industrial Commission. No action was taken on this filing. On 19 March 1974, the Bureau made another filing superseding the filing of 13 June 1973, and the 18

June 1974 filing superseded the 19 March 1974 filing. The 18 June 1974 filing took into account experience factors and additional legislative changes which were not present in the 13 June 1973 filing. While this case has been in litigation, a new filing for workmen's compensation insurance rates has been made pursuant to Article 13C of Chapter 58 of the General Statutes.

At hearings on the rate changes proposed by the 18 June 1974 filing, the Bureau offered much statistical evidence and oral testimony including the testimony of Anthony J. Grippa. Mr. Grippa is an associate actuary with the National Council on Compensation Insurance, which is a national rate-making organization. The National Council is the primary rating organization for workmen's compensation insurance in the United States. In his testimony, Mr. Grippa explained the rate-making formula upon which the filing was based. In general, based upon statistics compiled as to premiums received and claims paid, the experience of the companies over a two-year period was used to recommend the total 9.4% reduction. The 23.4% recommended increase was arrived at by calculating what the losses during this period would have been had the increased legislative benefits, the increased medical benefits, and the assessment been in effect during this period. Among other things, Mr. Grippa testified that in compiling statistics no adjustment was made for increased payrolls as a separate factor, but payroll changes were reflected in additional premiums since premiums were based on payrolls and also in additional claims since claims were based on wages in many cases. Mr. Grippa also testified the frequency of any type claim is reflected in the experience statistics used by the Council. He testified the Council did not "try to project frequency by factors, but simply rather by what happened in the state."

Also testifying before the Commissioner was Mr. W. J. Burton III, Safety Director of Carolinas' Branch Associated General Contractors of America, Incorporated, and Mr. R. M. Boyce, a pulpwood dealer in Catawba County. Both these witnesses testified against any raise in rates. Mr. Burton testified as to the effect of a change on the construction business, and Mr. Boyce testified as to its effect on the pulpwood business.

On 14 October 1975, the Commissioner ruled on the filing. He found as a fact that the proposed rate and rate value changes for the effect of a legislative change in benefits, the changes in

hospital and medical fee changes and the assessment were not based on any actual loss or underwriting experience and that there was no credible evidence in the record justifying the changes. He found that a reasonable allowance for the effect of those factors on loss experience would be an allowance of an increase in the rates and rating values sufficient to offset the 9.4% rate reduction requested in the filing. The Commissioner further found that the current rates were reasonable, adequate, not unfairly discriminatory and in the public interest.

The Bureau appealed to the Court of Appeals from the Commissioner's order of 14 October 1975. This Court, in an opinion rendered 4 August 1976, remanded the case with directions to the Commissioner to make findings of fact to support his conclusions to the end that this Court could review the order. The Commissioner made such findings of fact on 11 February 1977. The findings of fact covered more than 22 pages. The Commissioner found facts to the effect that the portion of the Bureau's filing was correct so far as it justified a reduction of rates based on experience in the amount of 8.7%, but was incorrect so far as it supported an increase. He allowed an increase in an amount sufficient to offset the reduction of 8.7% and left the rates unchanged. The Commissioner has not ruled on the requested increases in the United States Longshoremen's and Harbor Workers' Compensation Coverage, changes in the excess loss premium factors, or the changes in the minimum premium formula.

To support his conclusion that no rate increase was justified, the Commissioner made the following findings of fact which we have divided into four separate categories: (1) The filing dated 13 June 1973 requested an approval of a rate increase of 18.4%. The filing of 18 June 1974 requested approval of a rate increase of 11.8%, which is approximately 33⅓% less than that requested earlier, although benefits had been increased for 1974. The same methodology was used in both and they cannot both be correct. (2) The same methodology used in the 18 June 1974 filing has been used in 11 other states to project the effect of benefit changes. Based on subsequent studies in those states of cumulative experience, a need for a downward change was shown in six states and a need for an upward change was shown in five states. Projections based on this methodology are, therefore, speculative and there is no clear indication available that the pricing of the effect

of the legislation was accurate. (3) There was no factor used in the filing to reflect changes in payroll conditions. (4) There was no factor used in the filing to reflect a trend in the frequency of accidents.

Based on his findings of fact, the Commissioner found there was no credible evidence in the record that the proposed rate meet the statutory requirements of reasonable, adequate, not unfairly discriminatory and in the public interests. The Bureau has again appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Isham B. Hudson, for John Randolph Ingram, Commissioner of Insurance, appellee.*

*Allen, Steed and Allen, P.A., by Thomas W. Steed, Jr., for Compensation Rating and Inspection Bureau, appellant.*

*WEBB, Judge.*

[1] We hold that the facts found by the Commissioner, on which he based his conclusion that a rate change should be denied, were not supported by material and substantial evidence, and his order must be vacated.

As to the Commissioner's finding that the 13 June 1973 filing and the 18 June 1974 filing cannot both be correct because the 1974 filing requested an increase of approximately 33⅓% less than the 1973 filing, although the benefits had been increased for the 1974 filing, the Commissioner has failed to take into account the fact that the 18 June 1974 filing included an experience review and a reduction in loss adjustment expense. The evidence does not support a finding that the two filings are inconsistent.

[2] We do not believe the Commissioner's conclusion is justified that the projections of the Bureau as to increased benefit costs are speculative because they are based on the same methods used to project costs in 11 other states, in which subsequent experience showed a need for a downward adjustment in six of the states and upward adjustment in five of the states. Parenthetically, we might say the fact that the upward and downward adjustments were almost equal between the 11 states in some support for the argument that it is a valid method of projection. We do not rest on this, however. The fact that experience might

require an upward or downward adjustment in rates does not invalidate a projection of rates. Retroactive rate-making has been disapproved in this State. *Commissioner of Insurance v. Automobile Rate Office*, 292 N.C. 1, 231 S.E. 2d 867 (1977). Prognostication of insurance rates can hardly be expected to achieve exact precision. Our system provides that if experience shows rates have been set at too high a level, they can be reduced.

We also hold the Commissioner erred in holding that there were no factors used in the filing to reflect changes in payroll conditions or frequency of accidents. The testimony of the only witness who testified as to the method of compiling the projected rates was that both the payroll and frequency factors were taken into account by the calendar year and policy year experiences of the companies. It may be that a trend factor was not necessary to support the filing, *Commissioner of Insurance v. Rating Bureau*, 292 N.C. 70, 231 S.E. 2d 882 (1977), but since we hold that the trend factor was taken into account in the filing, we do not pass on this.

The order of the Commissioner is vacated. Since a proceeding for new rates under a new statute has been initiated, we do not remand the case to the Commissioner. *Commissioner of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E. 2d 324 (1978).

Order vacated.

Judges BRITT and HEDRICK concur.